IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **STEVEN BYRDSONG,**<br>Reg No 02614-122,<br><br>     Plaintiff,<br><br>v.<br><br>**JEFFERSON DUNN, et al.,**<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)   Case No. 2:20-cv-301-ECM-CWB<br>)                    (WO)<br>)<br>)<br>) |

## <u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>

**I.     Introduction**

Steven Byrdsong, an indigent state inmate, filed this action to seek redress under 42 U.S.C. § 1983 for conduct allegedly occurring at Kilby Correctional Facility.  (Doc. 1).[1] Byrdsong alleges that Sergeant Willie Marvin used excessive force against him on the afternoon of January 4, 2020 while he was housed in the segregation unit—hitting him in the face multiple times, rendering him unconscious, and leaving him for dead.  (*Id*. at p. 2; Doc. 1-1 at p. 2). Byrdsong claims the assault was in retaliation for having told Sgt. Marvin earlier in the day that he intended to report a prior beating of inmates by correctional officers.  (Doc. 1-1 at p. 2). Byrdsong also names as defendants Commissioner Jefferson Dunn (whom he alleges engaged in wrongful conduct "by declineing [sic] to act as to the allegation made by plaintiff against ADOC Officials") and Warden Camelia Cargill (whom he alleges "failed to act as to the allegation made

---

[1] References to documents filed in this action are designated as "Doc."  Page references are to the electronic numbering affixed by the CM/ECF filing system and may not correspond to pagination on the original version as presented for filing.

1

against Sgt. Marvin and the official [sic] within her institution"). (Doc. 1-1 at p. 4). All of the defendants have been named in both their individual and official capacities. (*Id*. at p. 2). Byrdsong has requested a jury trial and seeks declaratory relief, injunctions, and monetary damages. (Doc. 1 at p. 4; Doc. 1-1 at pp. 4-5).

The defendants in turn filed a special report that included relevant evidentiary materials (e.g., affidavits, prison documents, and medical records) addressing Byrdsong's allegations. (Doc. 34 and Exhs. 1-8 thereto; Doc. 36 and Exhs. 1-2 thereto). After reviewing the special reports and exhibits, the court issued an order on September 29, 2020 that required Byrdsong to file a response to the defendants' submissions and to support the response with affidavits or other statements made under penalty of perjury. (Doc. 37). After an extension, Byrdsong timely filed a response on October 5, 2020. (Doc. 40; Doc. 43).

The September 29, 2020 Order also notified the parties that "the court may at any time [after expiration of the time for Byrdsong to file a response] and without further notice to the parties (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 37 at p. 2). Pursuant to that disclosure, the undersigned will now treat the defendants' special report as having presented arguments for summary judgment and will recommend that summary judgment be granted in favor of Commissioner Dunn and Warden Cargill on all claims but denied as to the excessive force claim against Defendant Marvin.

**II.     Summary Judgment Standard**

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party … . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and alerting the court to portions of the record that support the motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has satisfied that burden, the nonmovant is required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish a genuine dispute of material fact, the nonmovant must produce evidence such that a reasonable trier of fact could return a verdict in his favor. *See Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

In determining whether a genuine dispute of material fact exists, the court must view all of the evidence in a light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see also* Fed. R. Civ. P. 56(a). Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable

jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**III.    Facts**

Byrdsong's claims arise out of an incident allegedly occurring on January 4, 2020 wherein he was struck in the face by Sgt. Marvin. (Doc. 1; Doc. 1-1).[2] According to Byrdsong, the incident followed a disturbance on the preceding day that ended with correctional officers "hitting everyone with their fists while facing down on the beds." (Doc. 1-1 at p. 2). Byrdsong alleges that Sgt. Marvin stated in the aftermath of the incident that "he will make sure I go down for this assault." (*Id.*). Byrdsong further alleges that Sgt. Marvin directly assaulted him the next day:

> VIII.   On January 4, 2020 Sgt. Marvin second shift supervisor at [K]ilby Corr. Facility, approach my cell at 2:00pm and informed me, that he would make sure I plaintiff go down for the assault. Plaintiff then stated you trying to get me for something I "did not" do let me tell you what an assault is, assault is when you and your officers came in and starting punching folks for no reason, and you would have continue to punch us until I stated I would called I&I division.
>
> IX.   Sgt. Marvin then punch me hard in my face several times and I plaintiff was passed out unconscious.
>
> X.   I woke up didn't remember the time but it was late in the evening and got up from the floor, the left side of my face was completely swollen, and my left eye was swollen shut. Sgt. Marvin had punch me and knocked me out and lock me up in a cell and left me for dead.

(*Id.*).

---

[2] The undersigned notes that the Complaint was verified by Byrdsong and thus constitutes admissible evidence on summary judgment. *See, e.g., Walker v. Poveda*, 735 F. App'x 690 (11th Cir. 2018) ("[Plaintiff] verified his complaint … in accordance with 28 U.S.C. § 1746 by attesting to the truth of his factual assertions under penalty of perjury, and we have held that pleadings verified under § 1746 are admissible (and may substitute for sworn affidavits) on summary judgment."). (Doc. 1 at p. 4; Doc. 1-1 at p. 5). Byrdsong's later response, however, was not verified. (Doc. 43). The undersigned therefore has not considered any of the factual averments contained therein. *See Black v. Alabama Dep't of Corrections*, 578 F. App'x 794, 796 n. 2 (11th Cir. 2014).

>For his part, Sgt. Marvin has denied the allegations:
>
>I Sergeant Willie Marvin never entered inmate Steven Byrdsong assigned cell or used force on inmate Byrdsong.  At no time did I use any type of abusive or excessive force against inmate Byrdsong. …

(Doc. 34-4 at p. 1; *see also* Doc. 36-2 at p. 1).

The record further reflects that a body chart was completed at 2:45 p.m. on January 5, 2020 that noted "bruise and swelling around LT eye." (Doc. 34-7 at p. 8).  The chart also contained a statement from Byrdsong that "[t]he police jumped on me, I just woke up in the cell, happened sometime Saturday 1/4/2020." (*Id.*).  A second body chart was completed at 4:43 p.m. with consistent findings. (*Id*. at p. 7).  Medical records from January 5, 2020 likewise report "peri orbital swelling, discoloration, pain" for which Byrdsong was prescribed a "cold pack" and "Ibuprofen 200 mg, 2 tablets p.o b.i.d. p.r.n x 3." (*Id.* at p. 6).

Upon Byrdsong's transfer to the Hamilton Aged and Infirmed Facility on January 9, 2020, it was noted that he had "slight Left cheek swelling, slight discoloring L cheek," and he again was prescribed Ibuprofen.  (*Id*. at p. 3).  A body chart completed the same afternoon confirmed a "contusion per orbital on L eye." (*Id*. at p. 2).  And an x-ray report reflected the following: "No acute osseous facial abnormality is demonstrated by radiograph. More sensitive CT would be suggested on the basis of clinical judgment."  (*Id.* at p. 10).  The record does not indicate that Byrdsong either requested or received any additional medical treatment. (Doc. 1-1 at p. 4).

IV. Discussion

### A. Eleventh Amendment immunity bars Byrdsong's damages claims against all of the defendants in their official capacities.

To the extent Byrdsong is requesting monetary damages from the defendants in their official capacities, all defendants are entitled to absolute immunity. Official capacity suits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, a state employee may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996). With specific respect to the type of claims now being asserted by Byrdsong, it has been recognized that "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Accordingly, all of the defendants are entitled to sovereign immunity as to claims seeking monetary damages against them in their official capacities. *See, e.g., Selensky v. Alabama*, 619 F. App'x 846, 849 (11th Cir. 2015) ("[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]."); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

6

**B.    Byrdsong's claims for injunctive and declaratory relief have become moot.**

Byrdsong has asserted claims for injunctive and declaratory relief based on alleged actions occurring at Kilby Correctional Facility. (Doc. 1 at p. 2; Doc. 1-1). However, the record reflects that Byrdsong subsequently was transferred to various other institutions (Doc. 1-1 at p. 1; Doc. 15; Doc. 29; Doc. 45; Doc. 48) and is now being housed at Talladega Federal Correctional Institution (*See* https://www.doc.state.al.us/inmatesearch and https://www.bop.gov/inmateloc/) (last visited June 21, 2023). Because he is no longer incarcerated at the facility where the underlying conduct allegedly occurred, Byrdsong's claims for injunctive and declaratory relief are due to be dismissed as moot. *See Cotterall v. Paul,* 755 F. 2d 777, 780 (11th Cir. 1985) ("Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury.") (quotation marks and citation omitted); *Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988) (holding that "an inmate's request for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once an inmate has been transferred") (quotation marks and citation omitted); *Smith v. Allen,* 502 F. 3d 1255, 1267 (11th Cir. 2007) ("[A] transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief."), *abrogated on other grounds by Sossamon v. Texas,* 563 U.S. 277 (2011).

**C.    Byrdsong has failed to demonstrate a genuine dispute of material fact as to his claims against Commissioner Dunn and Warden Cargill for deliberate indifference.**

Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" toward an inmate's health and safety when the official knows that the inmate faces "a substantial risk of serious harm" and yet disregards the risk by

7

failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010).

"[D]eliberate indifference describes a state of mind more blameworthy than negligence," and ordinary lack of care for a prisoner's health or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 837. "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982). The law is settled that both objective and subjective elements are necessary. *Caldwell v. Warden, FCI Talladega*, 748 F.3d at 1090, 1099 (11th Cir. 2014).

With respect to the objective element, an inmate must first show "an objectively substantial risk of serious harm … exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala*., 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective element, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference … ." *Farmer*, 511 U.S. at 837-38 (internal

8

quotation marks omitted). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) ("Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident].").

Finally, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted). "Merely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*. In sum, a prison official cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of serious harm to an inmate, the prison official had knowledge of the risk, and despite such knowledge the prison official consciously disregarded the risk. *Farmer*, 511 U.S. at 837 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).

Byrdsong alleges that Commissioner Dunn and Warden Cargill failed to protect him from the excessive force allegedly used by Sgt. Marvin. (Doc. 1-1 at p. 4). Based upon a careful review of the record, the undersigned concludes that Byrdsong has failed to present any evidence that Commissioner Dunn and/or Warden Cargill were aware that he was at risk of being assaulted by

Sgt. Marvin. Indeed, both Commissioner Dunn and Warden Cargill have denied knowledge of the underlying incident. (Docs. 34-2 and 34-3). Under the circumstances presented, the undersigned thus concludes that summary judgment is due to be granted against Byrdsong on his claims for deliberate indifference against Commissioner Dunn and Warden Cargill.[3]

> **B. Byrdsong has presented a genuine dispute of material fact on his claim for excessive force against Sgt. Marvin in his individual capacity.**

Claims of excessive force are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *See Sikes*, 169 F.3d at 1374. Just as with claims for deliberate indifference, claims asserting an Eighth Amendment excessive force violation include both subjective and objective components. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.*; *see also Sims v. Artuz*, 230 F.3d 14, 22 (2nd Cir. 2000) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.") (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). The subjective component requires that "officials act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotations omitted). To establish the subjective element, a plaintiff must demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Sims*, 230 F.3d at 21.

The Eleventh Circuit has summarized the excessive force standard as follows:

---

[3] To the extent Byrdsong alleges that Commissioner Dunn and Warden Cargill are liable to him for failure to investigate his allegations of excessive force against Sgt. Marvin, such allegations fail to state a claim. *See, e.g., Jacoby v. PREA Coordinator,* No. 5:17-cv-53-MHH-TMP, 2017 WL 2962858, *4-5 (N.D. Ala. Apr. 3, 2017) (citing *Vinyard v. Wilson,* 311 F. 3d 1340, 1356 (11th Cir. 2002)).

10

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002). The Eleventh Circuit has further stated that "[w]hen evaluating whether the force used was excessive, we give broad deference to prison officials acting to preserve discipline and security." *Pearson v. Taylor*, 665 F. App'x 858, 863 (11th Cir. 2016) (citing *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990); *Hudson*, 503 U.S. at 7 (holding that courts are to "give a wide range of deference to prison officials acting to preserve discipline and security"). Generally speaking, correctional officers therefore are authorized to use force when a prisoner "fails to obey an order." *Pearson*, 665 F. App'x at 864 ("Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force.") (internal citation omitted); *Bennett*, 898 F.2d at 1533 ("Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding.").

11

Here, Byrdsong alleges that Sgt. Marvin hit him in the face multiple times while in his segregation cell and while not disobeying any type of order or causing any type of disruption. (Doc. 1-1 at p. 2). Byrdsong more specifically alleges that, after he threatened to report an officer assault from the prior evening, "Sgt. Marvin then punch me hard in my face several times and I plaintiff was passed out unconscious." *Id.* Although Sgt. Marvin disputes Byrdsong's account, Byrdsong's sworn allegations cannot be ignored at the summary judgment stage—and the evidence must be construed in a light most favorable to Byrdsong as the non-movant. *See Sears v. Roberts,* 922 F. 3d 1199, 1206 (11th Cir. 2019). That standard now mandates a finding that material facts surrounding the January 4, 2020 incident are in dispute, *i.e.*, whether Sgt Marvin used force against Byrdsong "maliciously and sadistically to cause harm." *Skrtich*, 280 F.3d at 1300-1301. Accordingly, the undersigned concludes that summary judgment is due to be denied on Byrdsong's claim of excessive force against Sgt. Marvin in his individual capacity.

    **C.    Byrdsong's supervisory capacity claims are not viable.**

To the extent Byrdsong alleges that Commissioner Dunn and Warden Cargill are liable to him in their supervisory positions for the actions or omissions of their subordinates based on a theory of respondeat superior, such claim must fail. The law is well established that supervisory officials cannot be held vicariously liable in § 1983 actions. *See, e.g., Belcher v. City of Foley,* 30 F.3d 1390, 1396-97 (11th Cir. 1994). As explained by the United States Supreme Court:

> … Government officials may not be held liable for the unconstitutional conduct of their subordinates [or co-workers] under the theory of *respondeat superior* [or vicarious liability] … . A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed [alongside,] by or under him, in the discharge of his official duties. Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead

> that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

*Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (internal quotation marks, citation, and parentheses omitted); *see also Cottone*, 326 F.3d at 1360 (holding that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability"); *Marsh,* 268 F.3d at 1035 (holding that a supervisory official "can have no respondeat superior liability for a section 1983 claim"); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (holding that 42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability).

Liability could attach to Commissioner Dunn and/or Warden Cargill only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions … and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360; *see also Iqbal*, 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Yet the record is clear that neither Commissioner Dunn nor Warden Cargill personally participated or had direct involvement in the underlying events. To establish a sufficient causal connection without direct participation, a plaintiff must present sufficient evidence of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so" or "a … custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that the supervisor directed the

subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). After extensive review of the pleadings and evidentiary materials, the undersigned concludes that Byrdsong has failed to present any such evidence in that regard. Accordingly, summary judgment is due to be granted in favor of Commissioner Dunn and Warden Cargill on any claims asserting respondeat superior/vicarious liability.

## V.    Conclusion

For all of these reasons, it is the **RECOMMENDATION** of the Magistrate Judge that:

1. summary judgment be **GRANTED** in favor of all of the defendants as to Byrdsong's claims for monetary damages against them in their official capacities;

2. summary judgment be **GRANTED** in favor of all of the defendants as to Byrdsong's claims for injunctive and declaratory relief;

3. summary judgment be **GRANTED** in favor of Commissioner Jefferson Dunn and Warden Camelia Cargill on all claims asserted against them in their individual capacities;

4. summary judgment be **DENIED** as to Sergeant Willie Marvin on Byrdsong's claim for excessive force asserted against him in his individual capacity; and

5. this action be set for jury trial on the excessive force claim as asserted against Sergeant Willie Marvin in his individual capacity.

It is **ORDERED** that any objections to this Recommendation must be filed by July 5, 2023. An objecting party must identify the specific portion of the factual findings or legal conclusions to which the objection is made and must describe in detail the basis for the objection. Frivolous, conclusive, or general objections will not be considered.

Failure to file a written objection to this Recommendation shall bar a party from a de novo determination by the District Court of any factual findings or legal conclusions contained herein and shall waive the right of the party to challenge on appeal any subsequent order that is based on factual findings and legal conclusions accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *see Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

**DONE** this the 21st day of June 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**